IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MIGUEL BEDOY and ERAGDI ADRIANA MACIAS,

**Plaintiffs,**

v.

NBCUNIVERSAL MEDIA, LLC and its affiliate
TELEMUNDO OF DENVER LLC d/b/a KDEN-TV

**Defendants.**

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs Miguel Bedoy and Eragdi Adriana Macias, by and through their attorneys, Wegener, Scarborough, Younge, & Hockensmith, LLP, hereby file this Complaint against Defendants NBCUniversal Media, LLC and Telemundo of Denver LLC d/b/a KDEN-TV and state as follows:

## I. INTRODUCTION

1.     Plaintiffs bring this lawsuit under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); the Colorado Wage Act, C.R.S. §§ 8-4-101, et seq. (the "CWA"); and all applicable Colorado Minimum Wage Orders, 7 CCR § 1103-1 ("Wage Orders"). The Colorado Wage Act along with the Colorado Minimum Wage Order No. 28 are collectively referred to herein as "Colorado Wage and Hour Law."

2.     Plaintiffs also bring this lawsuit under Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1981.

## II. JURISDICTION AND VENUE

3.      Plaintiffs incorporate the allegations contained in Paragraphs 1-2 as if being fully set forth herein.

4.      This Court has personal and subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and has supplemental jurisdiction over certain claims in this matter pursuant to 28 U.S.C. § 1367.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because (i) a substantial part of the events or omissions giving rise to the claim occurred in the State of Colorado. Further, Title VII allows a plaintiff's claims to be brought "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3).

## III. PARTIES

6.      Plaintiffs incorporate the allegations contained in Paragraphs 1-5 as if being fully set forth herein.

7.      Plaintiff Miguel Bedoy is a resident of Mexico.

8.      Plaintiff Eragdi Adriana Macias is a resident of Mexico.

9.      Defendant NBCUniversal Media, LLC ("NBC") is a limited liability company incorporated under the laws of the State of Delaware, with its principal place of business located at 30 Rockefeller Plaza, New York, NY 10112.

10.     Defendant Telemundo of Denver LLC d/b/a KDEN-TV ("Telemundo") is a limited liability company incorporated under the law of the state of Delaware, with its principal place of business located at 4100 E. Dry Creek Road, Centennial, CO 80122.

## IV. FACTS

11.     Plaintiffs incorporate the allegations contained in Paragraphs 1-10 as if being fully set forth herein.

12.     NBC is a media and entertainment company that operates a portfolio of news and entertainment networks.

13.     Upon information and belief, Telemundo is owned by NBC and Telemundo is an affiliate television station of NBC.

14.     Telemundo is a media and entertainment company in the production and distribution of Spanish-language content.

15.     Prior to working at Telemundo, Plaintiffs were experienced on-air personalities.

16.     Plaintiff Bedoy was employed at WNJU Telemundo 47 ("WNJU"), where he had been a weekend weather anchor since 2016.

17.     Prior to joining WNJU, Plaintiff Bedoy worked at Univision Dallas KUVN for more than two years and Univision Houston for 3 years.

18.     Similarly, Plaintiff Macias worked as a Multimedia Journalist at KORO Univision Corpus Christi ("KORO") since June 2016.

19.     Prior to working at KORO, Plaintiff Macias had previously worked as an investigative reporter for the website Borderzine.com, covering border stories.

20.     Before that, Plaintiff Macias was a TV host for Multimedios Television/K26KJ Ciudad Juarez, Chihuahua.

21.     Plaintiffs were employed with Telemundo as on-air personalities.

22.     Plaintiff Bedoy was employed with Defendants as a non-exempt News Anchor from May 2018 to October 2019.

23.     Plaintiff Macias was employed with Defendants as a non-exempt Multimedia Journalist and News Anchor from April 2018 to October 2019.

24.     Throughout their employment, Plaintiffs worked at Telemundo's station located at 4100 E. Dry Creek Road, Centennial, CO 80122 (referred to herein as the "Station").

25.     Plaintiffs' employment recently came to an end with Telemundo after they made complaints regarding a hostile work environment and various discriminatory actions by their supervisor, News Director, Ms. Grisella Sierra.

26.     Ms. Sierra is Puerto Rican.

27.     Additionally, throughout their employment, Plaintiffs were subjected to discrimination and a hostile work environment from Telemundo/NBC executives, Ms. Olga Holschbach and Ms. Tatiana Arguello.

28.     Ms. Holschbach is the Vice President of Human Resources at Telemundo/NBC.

29.     Ms. Arguello is Telemundo's general manager and is responsible for leading all station operations including news, digital, sales, marketing, and operations.

30.     Plaintiff Bedoy always performed his job duties satisfactorily and was consistently recognized in areas including teamwork, professionalism, creativity, and processes. Plaintiff

Bedoy even won three local Emmys for his work and received the award of the best news anchor in Colorado by the Colorado Broadcasting Association.

31.     Shortly after he was hired, Ms. Sierra invited Plaintiff Bedoy out one evening. When Ms. Sierra arrived at Plaintiff Bedoy's residence, Ms. Sierra was surprised to find that Plaintiff Bedoy was gay, and Plaintiff Bedoy asked if his partner, Eric, could join them.

32.     While dining out, Ms. Sierra discussed Plaintiff Bedoy's position at the Station, and during this conversation, Ms. Sierra repeatedly told Plaintiff Bedoy that he needed to be "a macho man" and that she did not want him to be a "sissy."

33.     Ms. Sierra made similar statements to Plaintiff Bedoy on several occasions over the following months.

34.     In addition to calling Plaintiff Bedoy a "sissy," Ms. Sierra would also make discriminatory comments about coworkers that are members of Plaintiff Bedoy's protected classes.

35.     For example, Ms. Sierra would often make fun of another gay employee by saying he was acting like a woman or "mariposa," and that he needed to be more "macho." These comments were made in front of Plaintiff Bedoy and other employees.

36.     Given Ms. Sierra's prior comments, Plaintiff Bedoy reasonably believed that those derogatory comments were also directed at him and belittled his sexual orientation.

37.     Ms. Sierra would also tell female employees who mentioned that Plaintiff Bedoy was handsome that he was a "maricon", "pajara", or "faggot" and that he was not interested in women. "Maricon" and "pajara" are crude, derogatory terms for gay men.

38.     Ms. Sierra would also routinely make comments about Plaintiff Bedoy's physical appearance.

39.     In January of 2019, Plaintiff Bedoy returned from a vacation in Mexico. When he returned to the Station, and in front of his co-workers, Ms. Sierra made fun of his physical appearance, and stated that he had come back from vacation "really fat."

40.     Ms. Sierra started laughing out loud about her statement in front of everyone. Plaintiff Bedoy was humiliated and, in the days/weeks that followed, Ms. Sierra repeated to Plaintiff Bedoy that he was fat and needed to lose weight because he "would look like a pig on television."

41.     As a result of this behavior by Ms. Sierra, over the next few months Plaintiff Bedoy began to distance himself.

42.     However, when Plaintiff Bedoy would decline Ms. Sierra's social invitations or take any action contrary to Ms. Sierra's requests, Ms. Sierra created an environment so severe and pervasive any reasonable person would find Ms. Sierra's actions to be abusive and hostile.

43.     For instance, in July of 2019, Telemundo learned that El Chapo Guzman was being transferred to the prison in Florence, Colorado, and Plaintiff Bedoy was asked to do a live report from the prison.

44.     During the first broadcast, Plaintiff Bedoy chose not to wear a blazer because it was 104 degrees at the time.

45.     When Ms. Sierra learned about this, she demanded that Plaintiff Bedoy put back on his blazer.

46.      Plaintiff Bedoy reported his concerns about the heat to the executive producer, Mr. Mario Lopez.

47.     Mr. Lopez simply informed Plaintiff Bedoy that this was an order from Ms. Sierra, and he had no choice in the mater.

48.     Plaintiff Bedoy complied, and after finishing the 5:00 p.m. news segment, felt extremely ill and exhausted.

49.     Plaintiff Bedoy believed he could not any additional work that day; yet, he was pressured to do another story for the 10:00 p.m. newscast.

50.     The following day, Plaintiff Bedoy returned to Florence to complete additional live reports.

51.     At this time, Plaintiff Bedoy was cautioned by armed prison personnel that they had to follow prison security guidelines and that media personnel needed to stay in the designated areas.

52.     Nonetheless, Ms. Sierra informed the producer, Mr. Sergio Ornelas, to instruct Plaintiff Bedoy to go ahead and "violate" the prison's security protocols and to record the encounter.

53.     Ms. Sierra's requests blatantly threatened the safety of Plaintiff Bedoy and put him and the safety of the crew at risk.

54.     Plaintiff Bedoy refused to follow Ms. Sierra's instructions and Ms. Sierra became infuriated by Plaintiff Bedoy's refusal of her order.

55.     Plaintiff Bedoy decided he needed to report these incidents and contacted Ms. Holschbach, Vice President of Human Resources at Telemundo/NBC, to make a report.

56.     However, Ms. Holschbach failed to take any action, and instead, informed Ms. Sierra of Plaintiff Bedoy's complaints.

57.     Ms. Sierra continued to lash out and called Plaintiff Bedoy into her office to ridicule him for going to Human Resources.

58.     Shortly after, Mr. Bedoy was nominated for three local Emmys.

59.     Assumingly because of his complaints to Human Resources and Plaintiff Bedoy's sexual orientation, Ms. Sierra informed Plaintiff Bedoy that he could not take his partner, Eric, to the local Emmys ceremony.

60.     Although other employees (who were not gay) could bring a guest, Ms. Sierra explicitly told Plaintiff Bedoy that his partner could not come.

61.     In fact, Ms. Sierra stressed to Plaintiff Bedoy how important it was that he did not take Eric.

62.     These actions by Ms. Sierra were clearly due to Plaintiff Bedoy's sexual orientation and in retaliation for his complaints to Human Resources.

63.      Following these issues, Plaintiff Bedoy decided to follow up with Ms. Holschbach about the incidents he had previously reported. Unfortunately, Ms. Holschbach did not respond, and as such, Plaintiff Bedoy went to Ms. Arguello, the newest general manager of Telemundo, to express his concerns.

64.     After reporting the issues to Ms. Arguello, a meeting was called with Ms. Arguello, Ms. Holschbach, and Plaintiff Bedoy. During this meeting, Plaintiff Bedoy's complaints were criticized and not taken seriously.

65.     Ms. Holschbach defended Ms. Sierra and stated that Plaintiff Bedoy's complaints were not valid, and that Ms. Sierra was a good manager.

66.     After meeting for a few hours, Plaintiff Bedoy concluded that his complaints were not being addressed, and as such, he needed to elevate his complaints to the next level of Human Resources.

67.     Thus, in August of 2019, Plaintiff Bedoy anonymously reported several incidents of abuse and improprieties to a line operated by NBC, called NBC Listens.

68.     In exchange for making his report, Plaintiff Bedoy was promised anonymity and confidentiality. Plaintiff Bedoy was also informed that his supervisors at Telemundo could not retaliate against him.

69.     Plaintiff Bedoy was not contacted again regarding his complaints, and to his knowledge, no actions were ever taken against Ms. Sierra or any investigation completed.

70.     Throughout the term of his employment, the atmosphere that Ms. Sierra created at Telemundo was so severe that Plaintiff Bedoy began experiencing health issues which ultimately resulted in Plaintiff Bedoy taking a leave of absence for short-term disability in September of 2019.

71.     During this period, Plaintiff Bedoy visited his physician in Mexico and was diagnosed with gastritis and peptic esophageal stricture, which was likely a result of the stress, anxiety, and the depressive nature of the work environment.

72.     As a result of this diagnosis, Plaintiff Bedoy was required to follow a diet with a strict eating schedule.

73.     In October of 2019, Plaintiff Bedoy returned from short-term disability.

74.     Plaintiff Bedoy spoke with Ms. Sierra about his diagnosis and new diet restrictions. Specifically, Plaintiff Bedoy requested reasonable accommodations and requested that he be allowed to eat small meals at 3:00 p.m., 6:00 p.m., and 9:00 p.m. per his doctor's orders.

75.    Ms. Sierra immediately refused Plaintiff Bedoy's accommodation request and would not discuss the matter any further.

76.    Then on October 29, 2019, only a few days after Plaintiff Bedoy's return to the station, Ms. Arguello, Ms. Holschbach, Ms. Sierra, and Plaintiff Bedoy met for more than an hour to discuss Plaintiff Bedoy's employment with Telemundo.

77.    During this meeting, Plaintiff Bedoy was accused of being discontent and a poor employee. Although Plaintiff Bedoy vehemently denied these allegations, Ms. Sierra and Ms. Holschbach told Plaintiff Bedoy that his job duties were being restricted and that another employee would be handling his news segments going forward.

78.    On October 31, 2019, Plaintiff Bedoy was asked to attend another meeting by Ms. Arguello. At this meeting, approximately two months after Plaintiff Bedoy made his anonymous complaint to the tip line, Plaintiff Bedoy was terminated from his position without justification and escorted out of the station.

79.    Plaintiff Macias always performed her job duties satisfactorily, and like Plaintiff Bedoy was consistently recognized in areas including teamwork, professionalism, creativity, processes. Plaintiff Macias has won four local Emmys.

80.    Shortly after she was hired in June of 2018, Ms. Sierra first confronted Plaintiff Macias.

81.    On that date, Plaintiff Macias was approached by Ms. Sierra and was told that she needed to look for a bra that would make her "look better" and "to lift up" her breasts.

82.    When asked what she meant by this, Ms. Sierra said that Plaintiff Macias needed to find a bigger cup.

83.     Ms. Sierra repeatedly informed Plaintiff Macias that she wanted her to wear clothing that accentuated her breasts and made derogatory comments about Plaintiff Macias' physical appearance throughout her employment.

84.     Specifically, Ms. Sierra would make comments about Plaintiff Macias' weight and told her that she needed to lose weight and that Plaintiff Macias was looking "fatter."

85.     Plaintiff Macias was also unable to wear sleeveless dresses as, according to Ms. Sierra, her arms were too big.

86.     As she continued to work at Telemundo, Plaintiff Macias was not allowed to take periodic breaks.

87.     In this regard, Plaintiff Macias developed stomach pains and other health issues related to not being able to eat.

88.     Specifically, Plaintiff Macias became anemic and was diagnosed with irritable bowel syndrome due to stress, anxiety, and the long periods of time without eating. Plaintiff Macias was also informed that her intestines were inflamed and that this could eventually lead to a diagnosis of diverticulosis.

89.     Plaintiff Macias' health issues became so severe she even fainted at work due to her inability to eat.

90.     As such, it became necessary for her to take sick days for which Ms. Sierra often intrusively required Plaintiff Macias to explain these absences.

91.     To continue with her job duties, Plaintiff Macias requested that she be allowed to take short breaks throughout the workday so that she may eat.

92.     Without justification or engaging in any interactive process, Telemundo refused Plaintiff Macias' accommodation request, indeed, Ms. Sierra simply stated to Plaintiff Macias that "she did not eat either."

93.     Ms. Sierra also frequently belittled Plaintiff Macias in front of her co-workers and made inappropriate and derogatory comments regarding Plaintiff Macias' national origin.

94.     For example, Ms. Sierra stated that people from northern Mexico are aggressive and dangerous because of the violence they live with.

95.     Ms. Sierra also routinely instructed Plaintiff Macias to interview "Juans" and "Juanitas" and would refer to other employees as "Juans" or "Juanitas," which are derogatory terms for Hispanic people of Mexican descent.

96.     Being from Juarez, Plaintiff Macias was deeply offended.

97.     Ms. Sierra also told Plaintiff Macias' co-workers that she was contaminating the workplace with her crying and that the reason Plaintiff Macias was crying was because she did not know her real father.

98.     Due to this continued mistreatment, Plaintiff Macias became depressed and would often have anxiety attacks.

99.     By August of 2019, Plaintiff Macias felt that it was necessary to contact Telemundo's HRConnection, an anonymous NBC helpline, as her concerns were not being adequately handled internally at Telemundo.

100.    During that conversation, Plaintiff Macias was informed that her complaints would remain confidential and that she would be contacted by an investigator at a later date.

101.    Nevertheless, HRConnection conducted a sham investigation and failed to keep Plaintiff Macias' complaints confidential by divulging this information to Ms. Sierra and Ms. Holschbach.

102.    Within days of making her "confidential" complaint, Plaintiff Macias was asked to attend a meeting with Ms. Sierra wherein Ms. Sierra discussed Plaintiff Macias' complaints.

103.    Without taking any action or following up with Plaintiff Macias, HRConnection ended its inquiry.

104.    Even though Defendants received multiple complaints regarding a hostile work environment and discrimination it became apparent to Plaintiff Macias that Defendants intended to take no further action.

105.    Shortly thereafter, Plaintiff Macias was blindsided when Ms. Sierra gave her a "final written warning."

106.    Prior to this warning, Plaintiff Macias had not been disciplined.

107.    According to Ms. Sierra, the reason for this warning was due to Plaintiff Macias questioning her and making negative comments about Telemundo's management at an off-duty, off-premises party that was a non-work function.

108.    To be clear, Plaintiff Macias did not speak negatively of Telemundo, and only commented on the discrimination, harassment, and mistreatment she was being subjected to by her supervisors.

109.    Regardless, Plaintiff Macias engaged in lawful off-duty conduct and should have never been subjected to any disciplinary action.

110.    Further, other similarly situated employees, not of her protected classes and/or not known to have engaged in protected activity who also attended the party were not reprimanded.

111.    This "final warning", which came shortly after Plaintiff Macias' complaint to HRConnection, further supports Plaintiff Macias' belief that Ms. Sierra was told about the "confidential" complaint.

112.    Following this written warning, Plaintiff Macias felt that it was only a matter of time before she would be terminated.

113.    Moreover, a few days later, Plaintiff Bedoy informed Plaintiff Macias that he had been terminated.

114.    In fear of being terminated and with her health issues in mind, Plaintiff Macias resigned and was constructively discharged on October 31, 2019.

115.    Due to the mistreatment Plaintiff Macias sustained at Telemundo, she was then diagnosed with PTSD, anxiety, major depressive disorder, bulimia nervosa, and a binge eating disorder.

116.    Plaintiff Macias' bulimia nervosa developed due to Ms. Sierra's continuous comments about Plaintiff Macias' weight. Plaintiff Macias was involuntarily vomiting and taking laxatives because of the harassment.

117.    As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation.

## V. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Failure to Pay Overtime in Violation of the FLSA and Colorado Wage and Hour Law)**

118.     Plaintiffs incorporate the allegations contained in Paragraphs 1-117 as if being fully set forth herein.

119.     Plaintiffs, as non-exempt employees, were entitled to overtime as time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday, or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages.

120.     Plaintiffs day-to-day work was in large part dictated by management as Ms. Sierra and other executives at Telemundo directed and dictated the work of Plaintiffs and would assign and approve Plaintiffs' news stories.

121.     While Plaintiffs worked on their reports, their work, and the product they produced, were the result of their intelligence, diligence, and accuracy.

122.     Plaintiffs would often work ten-hour shifts.

123.     Plaintiffs would also work more than forty hours per workweek and were often required to work fifty (50) to sixty (60) hours per workweek.

124.     In addition to their standard hours, Plaintiffs were required to work nights and weekends.

125.     Plaintiffs were not compensated for any overtime work.

126.     When Plaintiffs raised their concerns to their supervisors at Telemundo, they were informed that Telemundo could make them work as much as it wanted without any additional pay.

127.    Following their employment, Plaintiffs demanded through their counsel that they be compensated for their unpaid overtime.

128.    Defendants denied this request.

129.    To date, Defendants have not compensated the Plaintiffs for any overtime pay.

130.    As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation, all in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**(Failure to Provide Meal and Rest Periods in Violation of Colorado Wage and Hour Law)**

131.    Plaintiffs incorporate the allegations contained in Paragraphs 1-130 as if being fully set forth herein.

132.    Plaintiffs were entitled to an uninterrupted and duty-free 30-minute unpaid meal period when their work shift exceeds five consecutive hours.

133.    Based upon a ten-hour shift, Plaintiffs were entitled to two 30-minute meal periods per day.

134.    Frequently, Plaintiffs were not allowed to consume meals while on duty.

135.    On the rare occasion where Plaintiffs were allowed to consume meals while on duty, Plaintiffs were not relieved of all their duties and would multitask or continue working while eating.

136.    Furthermore, Plaintiffs were entitled to a compensated 10-minute rest period for every four hours of work or major fractions thereof.

137.    Based upon a ten-hour shift, at a minimum, Plaintiffs were entitled to two rest periods.

138.    In addition to no meal periods, Plaintiffs were not provided any rest periods, albeit they repeatedly requested rest periods, as a result of their medical conditions.

139.    Plaintiffs were denied their requests for rest periods.

140.    Specifically, when Plaintiffs raised their concerns to their supervisors about no meal or rest periods, they were told that it was customary to not be provided meal or rest periods and that they needed to eat on their own time.

141.    As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation, all in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

### (Discrimination in violation of the ADA)

142.    Plaintiffs incorporate the allegations contained in Paragraphs 1-141 as if being fully set forth herein.

143.    Plaintiffs were physically impaired due to health complications and these impairments impacted their ability to perform certain functions of their job.

144.    Plaintiffs had established a record of such impairments through reporting to their superiors at Telemundo, and as such, Plaintiffs are protected by the ADA as qualified individuals with a disability as defined in 42 U.S.C. § 12111.

145.    Specifically, Plaintiffs reported their conditions to their direct supervisor, Ms. Sierra, and Ms. Holschbach.

146.     Plaintiffs requested reasonable accommodations in the form of breaks throughout the day so that they could eat.

147.     Plaintiffs were notified by their superiors at Telemundo that Telemundo would not agree to their requests for accommodations related to their health issues.

148.     Due to Plaintiffs' disabled status under the ADA, they were subjected to negative job action by Telemundo, including, but not limited to, Plaintiff Bedoy being terminated from his employment with Telemundo and Plaintiff Macias being constructively discharged from her employment with Telemundo.

149.     As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation, all in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

**(Failure to Provide a Reasonable Accommodation under the ADA)**

150.     Plaintiffs incorporate the allegations contained in Paragraphs 1-149 as if being fully set forth herein.

151.     Plaintiffs were physically impaired due to health complications and these impairments impacted their ability to perform certain functions of their job.

152.     Plaintiffs had established a record of such impairments through reporting to their superiors at Telemundo, and as such, Plaintiffs are protected by the ADA as qualified individuals with a disability as defined in 42 U.S.C. § 12111.

153.     Specifically, Plaintiffs reported their conditions to their direct supervisor, Ms. Sierra, as well as Ms. Holschbach.

154.    Plaintiffs requested reasonable accommodations in the form of breaks throughout the day so that they could eat.

155.    Accommodations under the ADA could have easily been made for Plaintiffs and their medical conditions since employees are entitled to an uninterrupted and duty-free 30-minute unpaid meal period when their work shift exceeds five consecutive hours and employees are entitled to a compensated 10-minute rest period for every four hours of work or major fractions thereof as set forth in Colorado Wage and Hour Law.

156.    Further, the break times that Plaintiff Bedoy requested at 3:00 p.m., 6:00 p.m., and 9:00 p.m., would not have interfered with any of the newscasts Plaintiff Bedoy had to anchor which were at 5:00 p.m. and 10:00 p.m.

157.    Defendants failed to provide any reasonable accommodations to Plaintiffs despite their request for such accommodations. Specifically, Defendants would not allow Plaintiffs either meal periods or rest periods throughout their shifts.

158.    As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation, all in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Discrimination in violation of Title VII and 42 U.S.C. § 1981)

159.    Plaintiffs incorporate the allegations contained in Paragraphs 1-158 as if being fully set forth herein.

160.    Title VII and Section 1981 prohibit discrimination based on race, ancestry, or ethnic characteristics in the performance, modification, and termination of contracts, and the enjoyment

of all benefits, privileges, terms, and conditions of the contractual relationship. These statutes also prohibit harassment based on race, ancestry, or ethnic characteristics.

161. Plaintiff Bedoy is Hispanic and of Mexican descent.

162. Plaintiff Bedoy is also gay.

163. Plaintiff Bedoy was subjected to discrimination and adversely terminated because of his Mexican ancestry and his sexual orientation.

164. Moreover, Defendants terminated Plaintiff Bedoy for a false reason, that he was unhappy with his position, was pretext for discrimination.

165. When Plaintiff Bedoy was terminated, he was replaced by Yesmani Gomez, who had minimal to no prior experience as a News Anchor and had worked as a multimedia journalist and reporter. Mr. Gomez is also Cuban and not of Mexican descent.

166. Plaintiff Macias is Hispanic and of Mexican descent.

167. Plaintiff Macias was subjected to discrimination and constructively discharged because of her Mexican ancestry.

168. Plaintiff Macias, and also Plaintiff Bedoy, was subjected to ethnic slurs such as "Juans" and "Juanitas," which are derogatory terms for Hispanic people of Mexican descent. These slurs were made by Ms. Sierra who is Puerto Rican.

169. When Plaintiff Macias was constructively discharged, she was replaced by Sergio Ornelas, who had minimal to no prior experience as a multimedia journalist and had worked as a production assistance and producer. Mr. Ornelas has resided in Colorado for approximately eighteen (18) years.

170.  Defendants also constructively discharged Plaintiff Macias for a false reason, that she was portraying a negative image of Telemundo, and was pretext for discrimination.

171.  As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation, all in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (Retaliation in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1981)

172.  Plaintiffs incorporate the allegations contained in Paragraphs 1-171 as if being fully set forth herein.

173.  Title VII prohibits retaliation for opposing acts prohibited by the anti-discrimination sections of the law. 42 U.S.C. § 2000e-3(a). 42 U.S.C. § 1981 also prohibits retaliation.

174.  Plaintiffs engaged in protected activities by complaining of discriminatory treatment to management as well as Defendants' human resource departments, HRConnection and NBC Listens.

175.  Plaintiff Bedoy engaged in protected activity when he requested a reasonable accommodation to eat meals and to work 8-hour shifts, as well as when he anonymously complained to NBC Listens about the discriminatory statements made by Ms. Sierra and the inactions of Ms. Holschbach and Ms. Arguello.

176.  Despite this, Plaintiff Bedoy was subjected to further retaliatory action and subjected to unequal terms and conditions of employment when he was scheduled to work 10-hour shifts without additional compensation.

177.     Other similarly situated employees, not of his protected classes and/or not known to have engaged in protected activity were permitted to work 8-hour shifts and were compensated for any hours worked in excess thereof.

178.     Further, other similarly situated employees, not of his protected classes, including employees who identified as straight, were not subjected to the discrimination Plaintiff Bedoy endured.

179.     Ultimately, Plaintiff Bedoy was demoted and then terminated because of his complaints to management.

180.     The reason for Plaintiff Bedoy's termination, that he was unhappy with his position, is false and is a pretext for discrimination and retaliation.

181.     Plaintiff Macias engaged in protected activity when she requested a reasonable accommodation to eat meals and to work consistently scheduled hours, as well as when she anonymously complained to HRConnection about the discriminatory statements by Ms. Sierra.

182.     Despite this, Plaintiff Macias was subjected to further retaliatory action and subjected to unequal terms and conditions of employment when she was scheduled to work shifts that contained scheduled start times but did not contain scheduled end times.

183.     Other similarly situated employees, not of her protected classes and/or not known to have engaged in protected activity were permitted to work schedules with established end times.

184.     Further, other similarly situated employees, not of her protected classes, including those who were Puerto Rican, were not subjected to the discrimination Plaintiff Macias endured.

185.     Plaintiff Macias was subjected to further harassment and then was reprimanded with a final warning because of her complaints to management.

186.  The reason for Plaintiff Macias' constructive discharge, that she was portraying a negative image of Telemundo, was false and is pretext for discrimination and retaliation.

187.  As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation, all in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (Promissory Estoppel)

188.  Plaintiffs incorporate the allegations contained in Paragraphs 1-187 as if being fully set forth herein.

189.  Defendants' personnel policy, "Solutions: an Alternative Dispute Resolution Procedure" ("Solutions"), promises that it provides employees a fair, quick and efficient process to resolve certain claims arising out of or related to their employment relationship with Telemundo.

190.  Further, Defendants promise that employees may make anonymous complaints to NBC Listens and HRConnection which "expertly solves employee questions and concerns related to human resources."

191.  Defendants gave these policies to the Plaintiffs and all other employees.

192.  At all times relevant thereto, Defendants should have reasonably expected that Plaintiffs would have relied on these promises.

193.  In reliance upon said promises, Plaintiffs complained of harassment, discrimination, and the hostile work environment they were experiencing at the Station.

194.  Plaintiff Bedoy made an anonymous complaint to NBC Listens and Plaintiff Macias also filed an anonymous complaint with HRConnection.

195. Plaintiffs detrimentally relied on the Defendants' promises to thoroughly investigate all such complaints as Plaintiffs' complaints of harassment, discrimination, and the hostile work environment they were experiencing went uninvestigated and ignored.

196. Specifically, although demanding that Plaintiffs adhere to the Solutions policy prior to filing this lawsuit, the Defendants have failed to follow the Solutions policy and its applicable deadlines and procedures.

197. Plaintiffs also detrimentally relied on the Defendants' promise to keep their complaints confidential, however, their complaints of harassment, discrimination, and the hostile work environment they were experiencing were disclosed to various personnel, including Ms. Sierra, and they were subjected to further harassment and discrimination.

198. Plaintiffs suffered damages and or losses as a result of their reliance on the Defendants' promises as Plaintiff Bedoy was terminated from his position and Plaintiff Macias was constructively discharged.

199. As such, the Defendants' promises that they will thoroughly investigate all complaints of harassment, discrimination, and hostile work environments must be enforced to prevent injustice.

200. As a direct and proximate result of Defendants' actions, Plaintiffs have sustained damages, including mental anguish and emotional distress, lost wages, and damage to their reputation, all in an amount to be proven at trial.

## VI. JURY DEMAND

201. Plaintiffs hereby demand a trial to a jury on all issues.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court issue a summons for Defendants to appear and answer, and that Plaintiffs be awarded a judgment against the Defendants for the following:

a)      Back pay and front pay in lieu of reinstatement;

b)      Mental anguish and emotional distress damages;

c)      Punitive damages;

d)      Pre-judgment and post-judgment interest as allowed by law;

e)      Attorney's fees and costs; and

f)      All such other and further relief to which Plaintiff may be justly entitled.


Date: August 24, 2020.

**WEGENER SCARBOROUGH YOUNGE & HOCKENSMITH, LLP**

By: */s/ Benjamin M. Wegener*
Benjamin M. Wegener, Esq. (36952)
Meaghan E. Fischer, Esq. (50069)
743 Horizon Court, Suite 200
Grand Junction, CO 81506
Telephone: 970-242-2645
Fax: 970-241-5719
Emails: ben@wegscar.com,
meaghan@wegscar.com

*Attorneys for Plaintiffs*